UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICHARD ARLINE,                                       :

                     Plaintiff,    :

                -v.-           :

JOHN E. POTTER, Postmaster General,  :
UNITED STATES POSTAL SERVICE,
                               :

                     Defendant.
-----------------------------------------------------------x

<u>OPINION AND ORDER</u>

03 Civ. 9702 (GWG)

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

APPEARANCES OF COUNSEL:

Denis P. McAllister
350 Old Country Road
Suite 101
Garden City, NY 11530

Allison D. Penn
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RICHARD ARLINE,                                             :

                        Plaintiff,                          :
                                                               OPINION AND ORDER
            -v.-                                            :
                                                               03 Civ. 9702 (GWG)
JOHN E. POTTER, Postmaster General,                         :
UNITED STATES POSTAL SERVICE,
                                                            :
                        Defendant.
------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

On December 8, 2003, plaintiff Richard Arline commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), against defendant John E. Potter, Postmaster General of the United States Postal Service ("USPS"), alleging that the USPS intentionally discriminated against him on account of his race and sex when it refused to promote him to several positions at the United States Postal Inspection Service ("USPIS"). The defendant – whom we will refer to for convenience as the USPS – now moves for summary judgment pursuant to Fed. R. Civ. P. 56. The parties have consented to the disposition of this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the USPS's motion is granted.

I. BACKGROUND

  A. Evidence Presented on the Summary Judgment Motion[1]

Arline is a 56-year-old African-American male. Def. 56.1 ¶ 1. On December 31, 1977, Arline began his employment with the USPIS as a trainee. Id. ¶ 2. In April 1978, he went to work as a postal inspector in the Macon, Georgia office of the USPIS until July 1982. Id. From 1982 until February 29, 2004, he held various positions in the USPIS, the last of which was as Division Training Officer in the Newark, New Jersey office beginning in March 1998. On February 29, 2004, Arline voluntarily retired from the USPS. Id. (citing Deposition of Richard Arline, dated September 22, 2004 ("Arline Dep.")) (reproduced as Ex. A to Declaration of Allison D. Penn, dated February 15, 2005 ("Penn Decl.") (annexed to Def. Motion)).

On August 30, 1999, the USPIS issued an Inspector Vacancy Announcement containing a posting for two vacancies for the position of Assistant Inspector in Charge ("AIC") in the Atlanta Field Office in the Southeast Division of the USPIS. Def. 56.1 ¶ 3. Arline submitted an application for this position – called a Postal Service Form 991 ("Form 991") – on September 13, 1999. Id. ¶¶ 3-4. A review panel convened to narrow the list of applicants to those the panel believed were best qualified. Id. ¶ 3. The review panel submitted a list of six out of fifteen applicants to the Selecting Official, Ira Carle, who was then Inspector in Charge for the Southeast Division of the USPIS. Id. Arline was among the six referred to Carle. Id.

---

[1] Arline has not alleged any facts in opposition to the USPS's motion for summary judgment, and he did not controvert any of the assertions contained in the USPS's statement pursuant to Local Civil Rule 56.1. See Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def. 56.1") (annexed to Notice of Motion, filed February 15, 2005 (Docket #13) ("Def. Motion")). The following facts are taken from that statement, each paragraph of which contains citations to evidence in the record.

Carle reviewed each of the six applicants' Form 991's and the written assessment of each applicant submitted by the applicant's manager. Def. 56.1 ¶ 4. Based on his review, Carle selected two African-American females, Yeudele Allen and Marsha Freso, for the positions. Id. Carle did so because he found that Allen and Freso had done a commendable job in demonstrating on their Form 991's that they were experienced and would bring value to the Division. Id. ¶ 5. By contrast, Carle found that Arline did not sufficiently identify his past work experience in his Form 991. Id. Furthermore, Arline did not adequately identify his past experiences in critical areas of Inspection Service Programs, which would be his responsibility if selected as AIC. Id. Arline's grammatical and typographical errors on his Form 991 weighed against him as well. Id.

On January 10, 2000, the USPIS issued another Inspector Vacancy Announcement posting a vacancy for the position of AIC, Field Office Inspector in Charge ("FOINC"), in the Memphis Field Office of the Southeast Division of the USPIS. Def. 56.1 ¶ 6. On January 24, 2000, Arline applied for the position. Id. Another review panel convened, and recommended six of the nine applicants, including Arline, to Carle. Id. Zane Hill, AIC in the Washington D.C. Office, also requested consideration for a non-competitive transfer to the position in the Memphis Field Office, and his request was forwarded to Carle on January 13, 2000. Id. ¶ 7. Non-competitive applications for reassignment could be considered before, during, or after the competitive process. Id. Carle reviewed all the applications and selected Hill, a Caucasian male, because he did a commendable job identifying his past work experiences and explaining the value he was going to bring to the Division. Id. ¶ 8. Hill's prior experience as an AIC, his interview, and his Form 991 were the deciding factors in Carle's decision to choose him. Id.

Carle determined Arline did not do a good job articulating and identifying in writing his experiences in critical areas that would have been his responsibility as a FOINC. Id.

On February 4, 2000, Arline applied for another position as a FOINC in the Kansas City Field Office in the Midwest Division of the USPIS. Def. 56.1 ¶ 9. Another review panel recommended Arline along with four other applicants. Id. This time, Ronald J. Terlep, then Inspector in Charge of the Midwest Division, was the selecting official. Id. Terlep reviewed the applications and the written assessments of the applicants submitted by their manager, and interviewed each applicant for approximately one hour. Id. He selected Robin Dagleish, a Caucasian female, for the position because she performed well during the interview, she was highly recommended by her manager, and she had recently served as the AIC to the Western Allegheny Division for ninety days. Id. ¶ 10. Terlep said that he was impressed by Arline's performance during the interview, and would have selected him had he not chosen Dagleish, but Dagleish demonstrated a better ability to manage a large caseload than Arline. Id.

On May 26, 2000, USPIS announced two vacancies for AIC positions in the New York Metro Division of the USPIS, and Arline applied. Def. 56.1 ¶ 11. Of the ten applicants, a review panel recommended five, including Arline, to John J. Skidmore, the individual in charge of selecting for the AIC positions. Id. Skidmore interviewed each applicant for approximately one hour. Id. Skidmore selected Thomas Van de Merlen and Ronald Walker, two Caucasian males, for the two vacant AIC positions because they both had acted in the AIC position in the New York Metro Division on numerous prior occasions, they both had demonstrated proficiency in their performance of their duties, and Skidmore believed the job of AIC required individuals who had experience and familiarity with the New York Office. Id. ¶¶ 12-13. Arline did not have

experience or familiarity with the New York Office, and had less knowledge of the New York Metro Division's operations.  Id. ¶ 14.  Furthermore, Skidmore was concerned about Arline's supervisor's reservation about recommending him for the position and Arline's limited supervisory experience.  Id.  Skidmore sent Arline an e-mail informing him that he was not chosen because of the merit of the selected applicants rather than any deficiency of Arline's.  See id. ¶ 15.

On February 26, 2002, the USPIS announced another AIC vacancy in the Western Allegheny Division of the USPIS, and Arline bid for this position.  Def. 56.1 ¶ 16.  James W. Birch, then Inspector in Charge of the Western Allegheny Division of the USPIS, was the selecting official for this position.  Id. ¶ 17.  A review panel convened and recommended four applicants, one of whom was Arline.  Id.  Birch reviewed the applications and conducted interviews in which he focused on three topics: (1) the applicant's overall knowledge of USPIS's mission, goals and objectives; (2) the applicant's understanding of their home division's goals and how they relate to national goals; and (3) the applicant's responses to scenarios involving leadership, inter-personal relations and work prioritization.  Id. ¶¶ 17-18.  Birch selected John Wisniewksi, a Caucasian male, because he demonstrated a substantive knowledge of the USPIS goals and objectives, and he demonstrated leadership in task force operations, team operations, and multi-agency initiatives.  Id. ¶ 19.  Arline did not demonstrate an understanding of national goals, much less how they related to field units such as the Western Allegheny Division.  Id. ¶ 20.  Nor was Arline familiar with the goals and initiatives of his own home unit.  Id.

B.  Procedural History

Arline filed an Equal Employment Opportunity ("EEO") Complaint dated January 10, 2000, challenging his non-selection for the Atlanta and Memphis positions on the grounds of race and gender discrimination.  Def. 56.1 ¶ 21 (citing EEO Complaint of Discrimination in the Postal Service, dated Jan. 10, 2000 (reproduced as Ex. G to Penn Decl.)).  Arline filed another EEO Complaint dated October 17, 2000, challenging his non-selection for the New York position on the grounds of race and gender discrimination.  Id. (citing EEO Complaint of Discrimination in the Postal Service, dated Oct. 17, 2000 (reproduced as Ex. I to Penn Decl.)).  Arline filed two more EEO Complaints challenging his non-selection for the Kansas City and Allegheny positions.  Id. (citing EEO Complaint of Discrimination in the Postal Service, dated Nov. 1, 2000 (reproduced as Ex. H to Penn Decl.); EEO Complaint of Discrimination in the Postal Service, dated Dec. 21, 2002 (reproduced as Ex. J to Penn Decl.)).  Arline is not challenging his non-selection for the St. Paul, Minnesota, AIC position.  Def. 56.1 ¶ 22.

The USPS consolidated the Atlanta, Memphis, Kansas City and New York EEO Complaints and issued a Final Agency Decision denying relief.  Def. 56.1 ¶ 23 (citing Final Agency Decision, dated Jan. 10, 2000 [sic] (reproduced as Ex. K to Penn Decl.)).  Arline appealed the denial to the Equal Employment Opportunity Commission ("EEOC"), which on September 8, 2003, affirmed the agency's decision denying relief.  Id. (citing Decision, dated Sept. 8, 2003 (reproduced as Ex. M to Penn Decl.).  The USPS issued another Final Agency Decision relating to the Allegheny EEO Complaint on December 17, 2003, and the EEOC affirmed the agency's decision on or about May 4, 2004.  Id. (citing Final Agency Decision,

6

dated Dec. 17, 2003 (reproduced as Ex. L to Penn Decl.); Decision, dated May 4, 2004 (reproduced as Ex. N to Penn Decl.)).

On December 8, 2003, Arline filed his Complaint in the instant action. See Complaint for Compensatory Damages, filed Dec. 8, 2003 (Docket #1) ("Complaint"). Arline filed an amended complaint on July 16, 2004. See Amended Complaint for Compensatory Damages, filed July 16, 2004 (Docket #9) ("Amended Complaint"). The USPS now moves for summary judgment dismissing the complaint. See Def. Motion. The USPS attached to its notice of motion various declarations – including declarations of USPS employees – along with a statement pursuant to Local Civil Rule 56.1. See Def. Motion; see generally Local Civ. R. 56.1(a) (requiring a party moving for summary judgment pursuant to Fed. R. Civ. P. 56 to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried"). It also submitted a memorandum of law. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment, filed Feb. 15, 2005 (Docket # 14) ("Def. Mem.").

In response, Arline's attorney submitted a memorandum of law that attached a copy of the amended complaint but did not attach any affidavits or other evidence opposing the motion. See Plaintiff's Brief in Opposition to Defendant's Motion, dated June 15, 2005 ("Pl. Opp. Mem."). The memorandum did not contain a statement of facts. More significantly, Arline did not submit a Rule 56.1 statement opposing the facts alleged in the USPS's Rule 56.1 statement as required by Local Civil Rule 56.1(b). On July 15, 2005, the USPS filed a reply brief. See Reply Memorandum of Law in Further Support of Defendant's Motion for Summary Judgment, filed July 15, 2005 (Docket #16) ("Def. Reply Mem.").

7

II.      LAW GOVERNING MOTIONS FOR SUMMARY JUDGMENT

    A.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Id. at 255 (citation omitted); accord Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the nonmoving party "must come forward with 'specific facts showing there is a genuine issue for trial,'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted), and "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); accord Argus Inc. v. Eastman Kodak Co., 801 F.2d 38, 42 (2d Cir. 1986), cert. denied 479 U.S. 1088 (1987). Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (quoting Celotex, 477 U.S. at 322) (internal quotations

omitted).  Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."  Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

"Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation," Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998), and thus a Title VII plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor," Anderson, 477 U.S. at 256.

B. Local Civil Rule 56.1

Local Civil Rule 56.1(a) requires a moving party to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56.1(d) requires that "[e]ach statement of material fact by a movant . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(e)."  Thus, Rule 56.1 does not allow the moving party to make factual assertions that are unsupported by the record.  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir. 2001).  Here, the USPS has submitted an appropriate Rule 56.1 statement containing citations to admissible evidence.

"Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (citing cases).  Rather, the party opposing the summary judgment motion has the obligation to point to admissible evidence in the record in support of any claim that there is a disputed issue of material fact.  Thus, Local Civil Rule

9

56.1(b) requires a party opposing a motion for summary judgment to include in its response "a corresponingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Here, Arline has failed to satisfy Local Civil Rule 56.1(b) because he submitted no such counterstatement. Nor did he submit affidavits or other admissible evidence. Notably, the one document he did submit in opposition to the USPS's motion – his memorandum of law – contains no statement of facts and merely asserts that the USPS's evidence is "circumspect and . . . self-serving and should be placed under the scrutiny of a jury." Pl. Opp. Mem. at 6. Local Civil Rule 56.1(c) provides that "[t]he facts set forth in" a Rule 56.1 statement "'will be deemed to be admitted unless controverted' by the opposing party's [Rule 56.1(b)] statement." Holtz, 258 F.3d at 72 (quoting Local Civil Rule 56.1(c)). Thus, all the facts in the USPS's Rule 56.1 Statement are deemed admitted by Arline.

C. Title VII Cases on Summary Judgment

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff carries the initial burden of establishing a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. See McDonnell Douglas, 411

U.S. at 802; Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001); accord St. Mary's, 509 U.S. at 506-07. If the employer articulates a non-discriminatory reason for its actions, the presumption of discrimination is eliminated and "the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. New York Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000). This is because "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains at all times with the plaintiff." Mary's, 509 U.S. at 507.

D. Prima Facie Case for Failure to Promote Under Title VII

To make out a prima facie case of discriminatory failure to promote, a plaintiff must show "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 126 (2d Cir. 2004) (citing cases). The fourth element of a prima facie case can be shown in a number of ways. For example, a plaintiff could point to "actions or remarks made by decisionmakers" that reflect a "discriminatory animus." Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996) (citing Ostrowski v. Atl. Mut. Ins. Companies, 968 F.2d 171, 182 (2d Cir. 1992)). A plaintiff could also provide evidence of "preferential treatment given to employees outside the protected class." Id. (citing Washington v. Garrett, 10 F.3d 1421, 1434 (9th Cir. 1993)).

III. DISCUSSION

The USPS moves for summary judgment dismissing the complaint on two grounds: (1) that Arline's complaint should be dismissed as moot; and (2) that his discrimination claims should be dismissed on the merits. See Def. Mem. at 11, 13. Each of these grounds is discussed below.

A. Mootness

The USPS argues Arline's claims are moot because he seeks no remedy to which he is entitled. See Def. Mem. at 11; Def. Reply Mem. at 2. Arline seeks in his Amended Complaint "back pay . . ., along with reasonable counsel fees . . . as well as Three Hundred Thousand ($300,000) in pecuniary, non-compensatory damages, and for such other and further relief as this Court deems just and proper." Amended Complaint ¶ 18. Had these requests for damages remained, Arline's claim plainly would not be moot. In response to an interrogatory seeking the basis of the claim for damages, however, Arline announced that he was seeking no damages of any kind in this case, other than attorney's fees and litigation costs. See Plaintiff's Response to Defendant's Discovery Demands (reproduced as Ex. P to Penn Decl.) ("Pl. Interrogatory"), at 13, 21. He does not even seek nominal damages.

What is left then is Arline's request for "such other relief that this Court deems proper." Amended Complaint ¶ 18. When the USPS pointed out in its moving brief that the plaintiff was seeking no remedy in this suit other than attorney's fees and costs, see Def. Mem. at 12, Arline's only response was that "this Court can permanently enjoin this Defendant from engaging in employment practices that discriminate . . ., and require the Defendant to carry out policies, practices and programs to provide equal employment opportunities." Pl. Opp. Mem. at 3.

12

Assuming this Court should consider this statement as supplementing the relief sought in the Amended Complaint, the only relief being sought in this case is (1) attorney's fees and costs, and (2) injunctive relief against the USPS, even though Arline no longer works there.

The record presented to this Court is insufficient to demonstrate that this case involves a live controversy. The "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them. The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (internal citations omitted). The related doctrine of standing requires, inter alia, that the plaintiff allege an injury that is "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984); United States v. Hays, 515 U.S. 737, 743 (1995); see generally Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189 (2000) (discussing relationship between mootness and standing). Thus, a case becomes moot "when it is impossible for the court to grant any effectual relief whatever to a prevailing party." In re Kurtzman, 194 F.3d 54, 58 (2d Cir. 1999) (internal citations, emphasis, and quotation marks omitted). "When a case becomes moot, the federal courts 'lack[] subject matter jurisdiction over the action.'" Fox v. Bd. of Trustees of the State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir. 1994) (quoting New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992)), cert. denied, 515 U.S. 1169 (1995). For a federal court to have subject matter jurisdiction over a case, "it is not enough that a dispute was very much alive when suit was filed . . . . The parties must continue to have a personal stake in the outcome of the lawsuit." Knaust v. City of Kingston, 157 F.3d 86, 88 (2d Cir.1998) (quoting Lewis v.

Continental Bank Corp., 494 U.S. 472, 477-78 (1990)) (internal citation and quotations omitted), cert. denied, 526 U.S. 1131 (1999).

Here, neither of Arline's requests for relief is sufficient to save this case from a mootness challenge. The request for attorney's fees and costs by itself cannot support Arline's standing inasmuch as attorney's fees and costs are available under Title VII only to a party that has "prevail[ed]" on his or her Title VII claim. 42 U.S.C. § 2000e-5(k); see also Fed. R. Civ. P. 54(d)(1). Without a substantive claim on which to prevail, a party obviously cannot claim any entitlement to these fees or costs. See Cramer v. Virginia Commonwealth University, 486 F. Supp. 187, 191-192 (E.D. Va. 1980) ("Dependency upon entitlement to attorney's fees does not avoid dismissal for mootness . . . [P]laintiff . . . cannot keep his present claim alive by asserting a claim to attorney's fees.").

Arline's request for injunctive relief cannot serve as the substantive claim in this suit. Certainly, "Title VII allows the courts to award a victorious plaintiff reinstatement . . . or 'any other equitable relief as the court deems appropriate.'" Bundy v. Jackson, 641 F.2d 934, 946 n.12 (D.C. Cir. 1981) (awarding injunctive relief under a discrimination claim) (quoting 42 U.S.C. § 2000e-5(g)). Arline, however, no longer works for the USPS because he voluntarily retired, Def. 56.1 ¶ 2; he does not seek reinstatement; and he does not assert that he would ever work for the USPS again. While he asks that this Court "permanently enjoin this Defendant from engaging in employment practices that discriminate . . ., and require the Defendant to carry out policies, practices and programs to provide equal employment opportunities," Pl. Opp. Mem. at 3, he gives no explanation of how the ordering of such relief will "redress[]" any injury suffered by Arline himself, Allen, 468 U.S. at 751, or why he has a "personal stake" in the

14

provision of such relief, Knaust, 157 F.3d at 88; see Christoforou v. Ryder Truck Rental, Inc., 668 F. Supp. 294, 301 n.3 (S.D.N.Y. 1987) ("Any claim for injunctive relief on plaintiff's hostile environment claim would be moot as to plaintiff since she is no longer employed by [defendant] and she does not wish to be so employed."). "Emotional involvement [in] a lawsuit is not enough to meet the case or controversy requirement." Ashcroft v. Mattis, 431 U.S. 171, 172-73 (1977).

Arline correctly notes that a case is not necessarily mooted merely because a defendant voluntarily ceases its discriminatory behavior. See Pl. Opp. Mem. at 4 (citing United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953)). Here, however, the mootness does not arise from any change in the USPS's behavior but rather because Arline seeks no relief that can redress any injury suffered by him. Arline also argues the case is not moot because the circumstances here are "capable of repetition." Pl. Opp. Mem. at 4. However, that exception to the mootness doctrine applies only where "there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (citations and internal quotation marks omitted) (emphasis added). Given that Arline does not assert that he intends to seek employment with the USPS, the exception does not save this case from a mootness challenge.

In sum, because "[c]ourts have no license to retain jurisdiction over cases in which one . . . part[y] plainly lacks a continuing interest," Friends of the Earth, Inc., 528 U.S. at 170, this case must be dismissed.

B. Discrimination Claims

In any event, even if plaintiff's claims were not moot, judgment would have to be entered against Arline on the merits. Because Arline bears the burden of proving his discrimination claims, see McDonnell Douglas, 411 U.S. at 802, the USPS's assertion in its brief that there is no evidence of discrimination, see Def. Mem. at 16, 21, required Arline to furnish admissible evidence showing that in fact the USPS engaged in discrimination. See, e.g., Feurtado v. City of New York, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004) (moving party is permitted to "use a memorandum or brief to point to the absence of evidence and thereby shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim") (citing cases) (internal quotation marks omitted). Arline, however, submitted no evidence at all and thus the case would have to be dismissed for this reason alone.

In addition, all of the facts asserted in the USPS's Rule 56.1 statement are deemed admitted pursuant to Local Civil Rule 56.1(c). None of these facts reflect any act of discrimination by the USPS. Thus, summary judgment must be entered in favor of the USPS for this reason as well. Finally, because plaintiff has not "prevail[ed]" on any of his claims, see 42 U.S.C. § 2000e-5(k), Fed. R. Civ. P. 54(d)(1), he is not entitled to attorney's fees or costs.

CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (Docket # 13) is granted. The Clerk is requested to enter judgment dismissing the complaint and to close this case.

SO ORDERED.

Dated: December 8, 2005
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Denis P. McAllister
350 Old Country Road
Suite 101
Garden City, NY 11530

Allison D. Penn
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007

Dated: December 8, 2005
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Denis P. McAllister
350 Old Country Road
Suite 101
Garden City, NY 11530

Allison D. Penn
Assistant United States Attorney
Southern District of New York
86 Chambers Street
New York, NY 10007